UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RASHAD DARDEN,

                              Petitioner,

     -vs-                                   **DECISION AND ORDER**
                                            **No. 10-CV-0570(MAT)**

JAMES T. CONWAY,

                              Respondent.
_____

## I.  Introduction

Pro se petitioner Rashad Darden ("Darden" or "Petitioner") has
filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254 challenging the constitutionality of his detention in
Respondent's custody. Darden is currently incarcerated as the
result of his conviction, following a jury trial in Monroe County
Court, on a charge of intentional murder.

## II.  Factual Background and Procedural History

Darden's conviction stems from an incident that occurred on
January 13, 2005, on Salina Street in the City of Rochester. At
about 5:15 p.m., as Asia McCray ("McCray") of 138 Salina Street was
leaving to go to the store, she saw Petitioner pointing a shotgun
at Keanon "Smurf" Smith ("Smith") in front of her house. She
immediately went back inside and told her aunt, Chardé Tillison
("Tillison"), what she had just seen. When she looked out the
window a moment later, she saw Petitioner shoot Smith at close
range. Smith fell to the ground but then got up and attempted to
walk across the street.

As he did so, Petitioner, who had started to flee after he fired the first shot, returned to approach the victim and shot him twice more before running away again . McCray never saw anything in the victim's hands.

Tillison testified that after her niece told her someone had a gun, she called 911 and watched the incident from a "peephole." Tillison witnessed Petition shoot Smith three times. She, too, could see that the victim did not have anything in his hands during the encounter. Tillison testified that after the first shot was fired at Smith, he fell down, but jumped up again and started walking across the street. After the second shot, Smith fell down once again and Darden stood over him and shot him once more.

From the window of their house across the street at 149 Salina Street, Hellen Greene Jordan and her husband, Kevin Jordan, also witnessed the shooting. Although neither recognized the individuals involved, both saw the man with the shotgun shoot the victim once and then, as the victim was staggering and shooting, "call the police," shoot him twice more. Mr. Jordan said that the third shot was fired at point-blank range.

The Jordans then went outside and approached the victim. Neither saw a gun in the victim's hands but noticed as they went to him that he was clutching some jewelry. They stayed with Smith until emergency assistance arrived.

The first police officer on the scene saw no weapons in the area. Ambulance personnel then arrived and began working on the

victim, who was not responsive. An EMT noticed plastic shotgun wadding protruding from the victim's neck. About twenty minutes later, after continuous attempts to resuscitate him, the victim was declared dead.

When Darden and a companion were stopped by a police officer who thought they were witnesses to the shooting, Petitioner stated that he had not heard any gunshots.

Later, the police brought Darden in for questioning. After waiving his Miranda rights, he initially denied knowing the victim or that he was on Salina Street at any time that day. Petitioner stated that he knew nothing about the shooting.

He eventually admitted shooting Smith with the shotgun, which had been recovered in a backyard nearby. According to Petitioner, he shot the victim after the victim, who had according Petitioner robbed him the previous day, pulled a pistol on him.

At trial, Petitioner admitted shooting Smith but asserted a claim of self-defense. Petitioner testified that Smith, whom he knew from seeing him frequently around the neighborhood, had robbed him at gunpoint the day before the shooting. Petitioner explained that he did not report the robbery to the police because he was scared and "didn't want to get involved."

The next day, Petitioner testified, he obtained a shotgun from a friend he knew only as "T" who lived "across town on the east side." Petitioner hid the shotgun behind an abandoned house.

On the day of the shooting, Petitioner retrieved the shotgun and put it in his pants.  As he and his friend, Jerome Roberts ("Roberts"), were walking down Salina Street, Smith suddenly appeared and according to Petitioner, Smith drew a pistol from his jacket and pointed it at him.  Petitioner then pulled the shotgun out of his pants and fired one shot at Smith. He started to run away, but when he saw Smith get up, he "racked" the gun and shot him again. Petitioner claimed that he really did not know how to operate the gun but knew that he needed to "rack" it from watching a lot of "gun movies".  Petitioner testified that after shooting Smith again, he then "blacked out" and could not remember the third shot. As Smith ran away, he claimed he passed the shotgun to his companion, Roberts. Roberts, however, was not called by the defense as a witness.

The medical examiner found evidence of shotgun injuries in five locations on Smith's body, including the right front of the lower chest, the back, the left side of the neck, the left wrist, and the back of the right hand. There was no way of determining the sequence in which the wounds were sustained. According to the medical examiner, multiple gunshot wounds caused Smith's death. Although each of the wounds was major, it was impossible to determine which of them caused Smith's death.

The jury rejected Darden's defense of justification and returned a verdict finding him guilty of intentional murder. He was

sentenced on July 28, 2005, to an indeterminate term of 25 years to life.

Darden's conviction was unanimously affirmed on direct appeal, and leave to appeal was denied. <u>People v. Darden</u>, 57 A.D.3d 1522 (App. Div. 4th Dept. 2008).

This habeas petition followed, in which Darden raises one ground for relief: trial counsel was ineffective in failing to request that the trial court charge the jury on the use of excessive force as it relates to the defense of justification. The claim, which was raised on direct appeal and denied on the merits, is fully exhausted. For the reasons that follow, it does not warrant habeas relief.

## III. Timeliness

Respondent asserts that the petition is untimely because it was not filed within the one-year statute of limitations. With limited exceptions, a prisoner seeking a writ of habeas corpus must submit his petition no more than one year after the judgment against him becomes final. <u>See</u> 28 U.S.C. § 2244(d)(1)(A)-(D). The statute also provides for tolling of the limitations period during the pendency of a "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim . . . ." 28 U.S.C. § 2244(d)(2).

For the purpose of deciding whether the Petition is timely, the Court must determine when the one-year period began running. In Darden's case, this requires a decision as to when the "judgment

became final by the conclusion of direct review or the expiration of time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On April 9, 2009, the New York State Court of Appeals denied leave to appeal from the Appellate Division's affirmance of his conviction. Adding to that a 90-day period during which he could have petitioned for <u>certiorari</u> in the United States Supreme Court, Petitioner's conviction became final on July 9, 2009. <u>See</u> <u>Clay v. United States</u>, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for <u>certiorari</u> contesting the appellate court's affirmation of the conviction."); SUP. CT. R. 13(1) (setting 90-day limit for filing of petition of writ of <u>certiorari</u>). Thus, the one-year statute of limitations commenced on July 9, 2009, and Petitioner had until July 9, 2010, to file his Section 2254 Petition in this Court.

Respondent argues that the Petition was filed on the date that it was received by the Court, which was July 12, 2010. This argument ignores the well-settled "prisoner mailbox rule". In <u>Houston v. Lack</u>, 487 U.S. 166 (1988), the United States Supreme Court held that a <u>pro</u> <u>se</u> habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. <u>Id.</u> at 276. The rule is premised on the fact that a pro se prisoner's mail must go through the conduit of prison authorities

whom he cannot control and whose interests might be adverse to his. Id. at 271.

"Where it is unclear when a pro se state prisoner mailed his or her habeas petition, the court assumes that the petition is filed on the day it is signed and dated." Porter v. Greiner, No. 00-6047, 2005 WL 3344828, at *7 (E.D.N.Y. Nov.18, 2005) (citing Adeline v. Stinson, 206 F.3d 249, 251 n. 1 (2d Cir.2000) ("[W]e treat the petitioner's petition as having been given to prison officials for filing, and therefore having been filed, on the date that appears on his petition . . . .")). The Court construes the date Darden signed the Petition before the Notary Public (July 6, 2009) as the effective filing date. The Petition accordingly is timely.

## IV. Legal Standards Applicable on Habeas Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is "contrary to," or involved an "unreasonable application" of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529

U.S. 362, 405 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id. at 407-09.

## V.   Ineffective Assistance of Trial Counsel

### A.   Strickland v. Washington, 466 U.S. 668 (1984)

The relevant "clearly established law" here derives from Strickland v. Washington, 466 U.S. 668, which provides the standard for inadequate assistance of counsel under the Sixth Amendment. E.g., Premo v. Moore, 131 S. Ct. 733, 737-38 (2011). "To establish ineffective assistance of counsel 'a defendant must show both deficient performance by counsel and prejudice.'" Premo, 131 S. Ct. at 739 (quoting Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009)). "To establish deficient performance, a person challenging a conviction must show that 'counsels representation fell below an objective standard of reasonableness.'" Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 688). "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 687). "[T]here is no reason for a court deciding an ineffective assistance claim to address

both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

As the Supreme Court recently has explained, "[surmounting Strickland's high bar is never an easy task[,]" Padilla v. Kentucky, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010), and "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Richter, 131 S. Ct. at 788.

**B.   Summary of Petitioner's Claim**

Petitioner contends trial counsel was ineffective in failing to request that the trial court, in the context of the justification defense, also charge that in order for the jury to consider the use of force after the first shot, the prosecution must have proved beyond a reasonable doubt that the deceased was still alive and that subsequent force was used. In effect, Petitioner contends that he was entitled to a charge requiring the jury to find that, if the victim had been killed by the first two shots, which Petitioner claimed were justified, he could not be found responsible for killing the victim with the subsequent shot. He argues that the charge was warranted because there was a reasonable view of the evidence permitting the jury to find that, although the first or second gunshot may have caused the victim's death, those shots were justified by self-defense; and that the third shot, although excessive, nevertheless was justified either because it was nonfatal or the victim was already dead.

**C.    The State Court's Ruling**

On direct appeal, the Appellate Division considered Darden's claim of ineffective assistance on the merits and rejected it as follows:

> There can be no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success[.]'" Here, we conclude that defense counsel was not ineffective in failing to request a charge on the use of excessive force as it relates to a justification defense. Although "a court must charge the jury on any claimed defense that is supported by a reasonable view of the evidence which the court must assess in the light most favorable to the defendant", here there is no reasonable view of the evidence supporting such a charge.

People v. Darden, 57 A.D.3d at 1523 (citing People v. Lee, 224 A.D.2d 916, 917 (App. Div. 4th Dept. 1996) ("Under the circumstances of this case, there is no view of the evidence to warrant that bifurcated analysis or require the court to give the charge requested. By defendant's own account, after defendant missed with the first shot, the victim started moving away from defendant. Nevertheless, defendant fired again and hit the victim in the back of the head or neck, knocking him face down to the ground. Defendant then fired two more shots into the back of the victim's head or neck. That evidence establishes that, after the first missed shot, defendant was no longer in apprehension of deadly physical force and became the aggressor. Thus, the shooting was not justified, regardless of which shot killed the victim.").

**D.    Analysis of the State Court's Ruling**

Under New York law, "a court must charge the jury on any claimed defense that is supported by a reasonable view of the evidence which the court must assess in the light most favorable to the defendant." People v. Taylor, 80 N.Y.2d 1, 12 (N.Y. 1992) (citations omitted). The use of physical force by a defendant in self-defense is permitted "when and to the extent [the defendant] reasonably believes such to be necessary to defend himself . . . from what he reasonably believes to be the use or imminent use of unlawful physical force" by another person. N.Y. PENAL LAW § 35.15(1). "Even if a defendant is initially justified in using deadly physical force in self-defense, if he or she continues to use deadly physical force after the assailant no longer poses a threat, a jury may find that the defendant is no longer acting in self-defense." People v. Carrera, 282 A.D.2d 614, 616 (App. Div. 2d Dept. 2001).

Where a defendant invoking the justification defense is charged with homicide, the prosecution must prove that it was the excessive force which caused death. Id. (citing People v. Hill, 226 A.D.2d 309, 310 (App. Div. 1st Dept. 1996) ("Even if the jury were to find that defendant employed excessive force after gaining some control of the gun and repelling the decedent's attack, the People still had the burden of establishing that it was the excessive portion of the force that caused death. No such showing was made here.") (internal citation omitted); People v. Perry, 176 A.D.2d

901, 902 (App. Div. 2d Dept. 1991); <u>People v. Patterson</u>, 21 A.D.2d 356, 361 (App. Div. 1st Dept. 1964)).

Although Petitioner failed to specify the particulars of the charge that trial counsel should have requested, it appears that he effectively sought a charge requiring the jury to find that, if the victim had been killed by the first and second shots-which Petitioner asserted were justified-he could not be found responsible for killing the victim with the third shot. Even assuming <u>arguendo</u> that such a charge was warranted, there is no reasonable possibility that the outcome of Darden's trial would have been more favorable had it been given. This is because, as the Appellate Division correctly determined, there was no reasonable view of the evidence permitting the jury to find that the victim was not alive at the time the third gunshot was fired. The testimony of all the witnesses to the shooting-including that of Petitioner-was that the victim clearly was alive after the first shot, and the next two shots came in quick succession. The medical evidence established that the victim died as a result of multiple gunshot wounds and that it could not be determined which was the fatal wound. To the contrary, the proof was that all of the shotgun wounds contributed to the victim's death.

Given that the victim was taken to the hospital where efforts to save his life continued for approximately twenty minutes after the last shot was fired, and that there was no evidence of a single fatal gunshot, the jury could not reasonably have determined that

-12-

the victim died between the second and third shots. In other words, contrary to Petitioner's contention, this was not a case where the homicide nevertheless was justifiable because the excessive force used was nonfatal. It would have been unreasonable for the jury to make such a finding on the evidence presented at trial. Cf. People v. Carrera, 282 A.D.2d at 616 ("The Assistant Medical Examiner testified that death was caused by the single stab wound to the chest, not by the alleged excessive force subsequently used. Since it cannot be determined whether the jury found that the defendant's conduct was not justified because he was the initial aggressor or because, although not the initial aggressor, he subsequently used excessive physical force, his conviction for manslaughter in the second degree must be reversed and a new trial ordered as to that crime.").

Because Darden cannot demonstrate a reasonable possibility, must less probability, that the jury would have returned a verdict of acquittal had trial counsel requested the charge discussed above, he cannot show that he was prejudiced by counsel's omission. Therefore, he cannot meet the first prong of Strickland. Because he cannot demonstrate both prongs of the conjunctive Strickland test, he cannot show constitutional ineffectiveness. Moreover, because his claim does not pass muster under a de novo application of Strickland, he necessarily cannot demonstrate that the state court's decision constituted an objectively unreasonable application of Strickland. See, e.g., Richter, 131 S. Ct. at 788

(When a state court has adjudicated an ineffective-assistance claim on the merits and § 2254(d) applies, "the question is not whether counsel's actions were reasonable" but rather is "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.").

## VI.   Conclusion

For the reasons stated above, the Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

S/Michael A. Telesca

_____
                   MICHAEL A. TELESCA
                   United States District Judge
DATED:    August 24, 2011
          Rochester, New York

-14-